302-10

STATE OF MAINE
PISCATAQUIS, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO CV-08-03

CORY CAMPBELL d/b/a
MBC ENTERPRISES,

Plaintiff,

v.

JAY MCLAUGHLIN,

Defendant.

ORDER

RECEIVED & FILED

OCT 25 2010

PISCATAQUIS COUNTY
Clerk's Office

A multi-day hearing on the complaint and counterclaims had been completed and post trial materials filed by December 4, 2009. The plaintiff was present and represented by counsel, Mark Randall, Esq., while the defendant was present and represented by counsel, Richard Johnson, Esq.

The issues in this litigation arise from two business interactions between the parties. First, the plaintiff owned real estate in Glenburn and he secured the services of defendant to cut wood on the lot as well as to clear a portion of it. Second, the plaintiff owned a woodlot in Atkinson, Maine and he secured the services of defendant to harvest timber on the lot. The parties disagree about the exact nature of their agreements concerning these transactions, leading to these disputes. In his complaint, plaintiff alleges breach of contract with regard to both the Glenburn lot and the Atkinson lots, injury to land and forest products pursuant to 14 M.R.S.A. § 7552, unjust enrichment, and conversion, all with regard to the Glenburn lot. Defendant has counterclaimed, alleging breach of oral contract with regard to the Glenburn lot, breach of contract with regard to the Atkinson lot, fraud, and quantum meruit. The Court will address the claims first with regard to Glenburn, and then with regard to Atkinson.

A. GLENBURN

Mr.Campbell purchased a sixty-acre lot on the banks of the Kenduskeag Stream in Glenburn in 2004 as a result of the bankruptcy of the Bangor and Aroostook Railroad. He initially arranged for a person to harvest wood on the lot and later desired to clean up the lot and remove the stumps and over-burden of brush and small trees growing over an area that contained a deposit of gravel. It was his plan to utilize and sell the gravel and sub-divide the parcel into house lots. He entered into a business arrangement with Mr. Mclaughlin to accomplish this goal.

Mr. Campbell insists that in February or March of 2005, Mr. Mclaughlin orally agreed to remove all trees, brush, and stumps and other material from the area, approximately five acres in size, over the gravel deposit so that the area could be used as a gravel pit. For the rest of the lot, all of the brush and small trees capable of being chipped would be processed in that manner and other trees up to five inches in diameter could be taken. Mr. Mclaughlin was also to install 2 culverts, remove a disabled wood harvester from the property, and clean up the stream side lots. In return, according to this version, he could keep all proceeds without payment of stumpage. Mr. Mclaughlin moved equipment onto the lot and began work.

In August or September Mr. Campbell went to the lot and observed that, in his opinion, most all trees on the lot had been cut and taken by Mr. Mclaughlin, and he also noticed, and had been told, that gravel had been taken. After a conversation with Defendant in which Mr. Mclaughlin insisted that he owed no money to Mr.Campbell related to the gravel removal, Campbell ordered Mclaughlin to leave the lot. Mr. Mclaughlin complied. Mr. Murdock, a forester, estimated that Mclaughlin had cut and removed approximately 450 cords of wood from the lot.

Defendant's version of the oral agreement is different. He indicates that he was to remove the over-burden and all trees from the gravel pit area, clean up the lot from the previous harvest, and engage in a selective cut of the remaining area. He also testified that the agreement included the improvement of the road to the gravel pit area so that it would be appropriate for gravel hauling. He was not required to pay stumpage and he was to charge for the use of equipment at the usual rate, to be satisfied by his removal of gravel at the rate of two dollars per yard until the bill for the equipment was paid. Thereafter he could remove gravel for the price of $2 per yard. He also indicates that he later agreed to install a culvert and remove a disabled wood harvester at his regular rate of compensation. He insists that he performed all terms of the agreement and was even supervised by Mr. Campbell's business partner, Mr. Davis. He also maintains that he removed no gravel, and was not paid for his services.

The Court must determine the terms of the oral agreement in order to decide the issues that the parties raise in this litigation. What makes this difficult is the obvious fact that each party has a significant interest in exaggerating or distorting the truth. The animosity between he parties is great. After a review of the evidence admitted at the hearing, and evaluating the arguments of counsel, however, the Court finds, by a preponderance of the evidence that the agreement was that the Defendant would remove the overburden and trees from the five acre pit area, and "selectively" cut, in some undefined way, the remainder of the lot. He also agreed to remove a disabled wood harvester from the lot. In return, the defendant could retain the proceeds from all marketable chips and timber and not pay stumpage to the plaintiff. The court finds that it is unlikely that the plaintiff would agree to forego stumpage, and make a gravel agreement, and pay defendant at the regular hourly rate for the work accomplished, as defendant maintains. The Court also finds that it is unlikely that the defendant would

clear the pit area, cut wood less than 5" in size only, and clean up and beautify lots all in exchange for foregoing stumpage. Even according to the defendant's version of the events, he harvested 150 cords of wood on the lot without paying stumpage and the Court finds, by a preponderance of evidence, that he actually harvested in excess of that amount. Based on the testimony of Dr. Murdoch, which the Court finds to be credible in this regard, the value of the 150 cords would be approximately $15,000 and the proceeds of what defendant actually harvested are significantly greater. The Court simply does not believe that plaintiff agreed to pay defendant an expensive hourly rate in addition to conferring the other contractual benefits. In reaching these conclusions, the Court does not accept the verbatim testimony of either party, nor the testimony of Vance Lambert, who provided detailed testimony of the time he worked at the Glenburn lot for defendant by referring to a book in which he recorded time spent at specific tasks. Pl. Ex. #6. The Court is suspicious of this exhibit, purporting to reflect his time working on the Glenburn job, for a variety of reasons. On some days he allegedly worked for unrealistically long periods of time, such as 26 hours on September 6, 2005 and 22 hours on June 10, 2005. Additionally, if it is his record of his work so that defendant could compensate him, why would Mr. Lambert bill at the rate for the machine, as he obviously did, rather than at his labor rate (as operator)? The Court believes this exhibit was contrived for litigation and was not a record created contemporaneously with the events being recorded.

The Court finds that there was no substantial breach of the agreement. At best, the description of defendant's obligations with regard to what trees he was to cut was general in nature and the Court does not find that the defendant devastated the lot as plaintiff described. Additionally, the Court has examined all photographs of the lot offered into evidence and discerns no support for the notion that defendant removed

numerous large trees, because the trunks of such trees are not evident in any photographs that plaintiff offered. Likewise, there is no support for the claim that defendant did not remove the overburden from the pit area. Photos clearly show that large portions of the pit area were cleaned of overburden, which permitted direct access to the gravel. The court also does not find that the defendant engaged in the unauthorized removal of gravel. Although it is obvious that defendant caused an unknown amount to be removed, despite his denials in this regard, the existence of the contractual agreement, def. ex. #10, prevents the Court from concluding that removal was unauthorized.

The Court also rejects the defendant's counterclaim concerning this transaction. Since there was no agreement concerning gravel, the defendant's exaggerated claim in this regard fails.[1] Since the agreement did not include the requirement that plaintiff pay defendant for services at an hourly rate, the counterclaim raising this theory of recovery also fails.

In light of these findings, the Court addresses the specific claims as follows:

Plaintiff has failed to prove that defendant breached the verbal contract with regard to the Glenburn lot, has failed to prove statutory injury to land and forest products by taking away forest products or gravel without permission, and has failed to prove unjust enrichment or conversion with regard to gravel or forest products.

Similarly, the defendant has failed to prove his counterclaims. He failed to prove breech of contract in the Glenburn transaction because he received the harvested wood as compensation for his efforts pursuant to the oral contract, which did not include any

---

[1] In ruling is this manner, the Court concludes that the issue of whether Def. Ex. #10, a January 2, 2004 written contract concerning gravel, is enforceable was not raised by the pleadings in this case. Defendant's counterclaim concerning gravel clearly described an oral agreement that the parties entered into on or about April 1, 2005, not a written one.

terms regarding gravel. Defendant also failed to prove fraud with regard to any Glenburn transactions and is not entitled to the reasonable value of any work above the amount he was already compensated.

B. ATKINSON

The parties signed a written contract for the harvesting of timber on plaintiff's land in Atkinson, Maine on September 24, 2005. Pl. Ex. #4. Most provisions related to defining the circumstances under which Defendant agreed to harvest wood and pay stumpage, but clause 5, which had said, "MBC pays for the road" was crossed out. Plaintiff's position is that they agreed plaintiff would hire a person and use defendant's excavator to build a road, while defendant insists that the plaintiff agreed to lease defendant's excavator. The defendant substantially completed the harvest and received payment for most of the wood that he sold and did not pay stumpage to the plaintiff, but plaintiff managed to have some of the purchasers pay him directly for the wood they accepted for McLaughlin. The parties dispute the amount realized from the sale of the wood harvested at Atkinson, the stumpage owed to the plaintiff in light of his retention of some of the proceeds from the sale of the wood, and the amount due for alleged excavator rental and damage. The defendant also claims certain set offs should be applied to reduce the amount owed.

First, the Court will address issues related to the construction of the woods road on the property that was needed in order to haul timber out of the wood lot. The Court does not find that the oral agreement in this regard included a provision that plaintiff would lease the defendant's excavator and hire an operator. If that were the agreement there would have been no need to cross out the clause that MBC pays for the road because, in essence, such an agreement would have caused the plaintiff to pay for the road. The Court finds that, instead, the parties agreed that the defendant's excavator

could be used to construct the road, and that plaintiff would pay for fuel and for the operator. Plaintiff does not owe defendant any sums for the use of the excavator. Additionally, the Court does not find the testimony from defendant and Vance Lambert to be credible concerning the alleged damage to the excavator while in plaintiff's hands. The three different versions of what purports to be a bill related to the transaction, Pl. Ex. #22B, 22A, and 53, cause the Court to suspect that none of the documents constitutes a true billing record. Instead, it is more likely that Mr. McLaughlin created them so that one could be used to send to plaintiff to gain advantage in this litigation. Plaintiff does not owe sums related to excavator damage, nonuse because of damage, or moving the excavator to or from the site. Additionally, the Court finds that the defendant is not entitled to reimbursement for the time he allegedly spent in order to improve the road.

The parties presented inconsistent testimony and exhibits concerning the proceeds of the sale of wood from the Atkinson lot. The Court finds that the most accurate evidence on this topic is found in Pl. Ex. 52, Defendant's record of the money received from this harvest and the appropriate stumpage related to those proceeds. Plaintiff's Ex. #21 alleging a higher stumpage due, is unreliable because it is premised on false assumptions concerning weight to cord conversions. Adding the various entries found in Pl. Ex. 52 reveals total stumpage of $38,407 minus an advance that the plaintiff does not appear to contest, yielding net stumpage of $35,908.94. Additionally, although the wood buyer typically pays all proceeds to the wood-cutter who then pays stumpage to the land owner, H.C. Haines paid the plaintiff directly for some wood harvested from the Atkinson lot. On October 6, 2005, Haines paid MBC $3,832.29, Def. Ex.# 6; on October 11, 2005, Haines paid MBC $5,575.63, Def. Ex. 7, and on October 18, 2005, Haines paid MBC $4,500.11, Def. Ex. #8. This total, $13,908.03, should obviously be

deducted from the stumpage due to obtain the net stumpage that defendant owes to plaintiff, $22,000.91.

Defendant argues that the amount should further be reduced by a series of payments that defendant made to MBC, Corey Campbell, and to Mike Davis, Campbell's former partner, all summarized on Def. Ex. 4-A., and argues that the amount should be further reduced by an amount that Maibec Industries paid directly to Campbell for wood McLaughlin caused to be delivered. The Court relates none of these transactions to the Atkinson agreement because all of these transactions took place between January and June 0f 2005, long before the Atkinson contract was signed. The parties had a long and complicated business relationship and litigation concerning two aspects of that relationship does not provide a forum to resolve unrelated claims.

The Entry Is:

The Court Orders that Judgment be entered on Count II of the plaintiff's complaint for the plaintiff and against the defendant in the amount of $22,000.91, plus interest and costs; and against the plaintiff and for the defendant on Counts I, III, IV, and V. The Court Orders that Judgment be entered against counterclaim plaintiff and for counterclaim defendant on all counterclaims.

Dated: October 20, 2005 2010

WILLIAM ANDERSON
JUSTICE, SUPERIOR COURT